UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

JEFFREY JOSEPH,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-287-16 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 18, 2017, Jeffrey Joseph pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Jeffrey Joseph is hereby sentenced to 108 months of incarceration, 3 years of supervised release, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Jeffrey Joseph ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 18, 2017, Defendant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment, which charged a Narcotics Trafficking Conspiracy. *See* Plea Agreement ¶ 1, ECF No. 432.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on May 22, 1985, in Brooklyn, New York. Presentence Report ("PSR") ¶ 62, ECF No. 544. Defendant is one of three children born to the marital union of Jean Joseph and Marie (née) Lourmel. *Id.* Defendant's father is a retired welder. *Id.* Defendant's mother is a retired home health aide. *Id.* Defendant's parents are aware of his arrest and conviction, and they remain supportive of him. *Id.*

Defendant has two siblings. *Id.* ¶ 64. Jean Joseph, Jr. resides in Pennsylvania, is married with two children, and is employed in retail. *Id.* Kelly Joseph resides at the address of record, is single with no children, and is employed in retail. *Id.* Defendant noted that his siblings have not

had any contact with the criminal justice system. *Id.* The siblings are aware of Defendant's arrest and conviction, and they remain supportive of him. *Id.*

Defendant was raised in an intact, middle-income household in Brooklyn, New York. *Id.* ¶ 66. He added that his parents worked hard to provide for him and his brothers. *Id.* Defendant described a childhood free from abuse. *Id.* However, he noted that the neighborhood that he was raised in had "good apples and bad apples." *Id.* Defendant explained that he was robbed at gun point at age twenty-seven, but was not injured during the robbery. *Id.*

Defendant has never married and he has not fathered any children. *Id.* ¶ 67. In addition, he is not currently involved in any long-term romantic relationships. *Id.* Defendant lived with his parents and brothers prior to his arrest. *Id.* ¶ 68.

Defendant has been incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York, since July 16, 2015. *Id.* ¶ 69. The database revealed Defendant has participated in the following educational courses: tutor training; cardio training; art program all units; parenting inside out dad; resume writing; and finance pre-trial. *Id.* The database also revealed a single disciplinary infraction against Defendant for phone abuse on October 11, 2016. *Id.* At the disciplinary hearing, Defendant admitted his guilt in this infracting, noting he had allowed another inmate to use his telephone account. *Id.* Defendant was sanctioned with six months loss of telephone to deter future behavior of this nature. *Id.*

Defendant obtained his high school equivalency in 2014. *Id.* ¶ 78. He attended the ninth and tenth grades at Metropolitan Corporate Academy in Brooklyn, New York, from 1999 to 2001. *Id.* ¶ 79. Defendant noted that he withdrew from school to find employment, as he wanted to assist his parents with their bills. *Id.*

3

Defendant reported to Probation that he was employed at Whole Foods Market from 2004 through 2012. *Id.* ¶ 83. Defendant was initially hired in the utility department, and he was transferred to the prep cook section. *Id.* He noted his career ended with Whole Foods in the shipping and receiving department. *Id.* Defendant reported he was laid off after his manager accused him of not clocking in on time to work. *Id.* Defendant has not been employed since being laid off from Whole Foods and collected unemployment benefits of $300.00 per week until 2014. *Id.* ¶ 82.

Defendant advised Probation that he suffers from chronic back pain, which was caused by lifting boxes at Whole Foods. *Id.* ¶ 71. He noted that he currently treats this condition with Ibuprofen. *Id.* Defendant previously self-medicated to treat this condition. *Id.* Defendant reported that he has undergone x-rays of his back, and the results of the x-rays showed no particular damage to his back. *Id.*

As corroborated by his mother and his brothers, Defendant is mentally healthy. *Id.* ¶ 72. He noted to Probation that he was sent to a school counselor during middle school because of behavioral problems. *Id.* According to the medical records from the MDC, Defendant has not requested nor received mental health treatment. *Id.* However, the defense suggests in its memorandum that Defendant may have "traumatic brain injury" due to a number of hits to the head and concussions Defendant may have sustained while engaged in fistfights and tackle football. Def. Sentencing Mem. at 3-4, ECF No. 612. Defendant has received no examination to verify whether or not he suffers from any such injury. *Id.* at 3.

Defendant reported to Probation that he first consumed alcohol at age fourteen. PSR ¶ 73. He added that for several years prior to his instant arrest he consumed alcohol daily. *Id.* Defendant reported he occasionally consumed alcohol to intoxication. *Id.* Defendant advised

Probation that he first smoked marijuana at age twelve, and he last smoked it the night before his arrest. *Id.* ¶ 74. He estimated he smoked 20 grams of marijuana daily, and he paid $200.00 per day for it. *Id.* On the advice of Defense Counsel, Defendant declined to discuss with Probation how he was able to pay for the marijuana. *Id.* Defendant reported that he first used prescription painkillers (Oxycodone and/or Percocet) at age twenty, and continued to use them up until his instant arrest. *Id.* ¶ 75. He estimated that he used them two times per day, but if he was unable to obtain them he would go without taking any. *Id.* Notably, Defendant has never been prescribed these medications by a treating physician. *Id.*

Defendant has no prior criminal convictions or arrests. *Id.* ¶¶ 54-60.

Defendant was involved with the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"), though the parties dispute whether he was an "associate" or a "member" of these gangs. *Id.* ¶ 37; Def. Sentencing Mem. at 1-2; Gov't Sentencing Mem. at 2 & n.1, ECF No. 615; Addendum to PSR at 1, ECF No. 614. SG was an offshoot of the OGC which included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey, Bosses In Business and the Bloods. PSR ¶ 4. Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6.

Defendant was a street-level narcotics distributor and sold cocaine base to various individuals. *Id.* ¶ 37. Defendant is accountable for at least 840 grams of cocaine base. *Id.* Defendant was also known to carry firearms as part of his narcotics distribution activities. *Id.* On June 3, 2014, Defendant was also involved in a robbery and attempted murder of John Doe #1. *Id.* ¶ 11. Defendant and several co-defendants surrounded John Doe #1 and attempted to steal his chain necklace. *Id.* Co-defendant Malik Campbell retrieved a gun from co-defendant Conell Brogdon's pocket and shot John Doe #1 multiple times, as depicted in a surveillance video. *Id.* The victim ultimately survived. *Id.*

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both provided dangerous and illegal drugs to his community and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to the Shoota Gang and the OGC. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family support.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Plea Agreement ¶ 1. He faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). Defendant also faces: a minimum term of supervised release of three years, 21 U.S.C. § 841(b)(1)(C); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C); and a special assessment of $100.00, 18 U.S.C. § 3013. Under the plea agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. *See* Plea Agreement ¶¶ 6-13.

## D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1 applies to violations of 21 U.S.C. § 846 and sets a base offense level of thirty-two for offenses involving at least 840 grams but less than 2.8 kilograms of cocaine base. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(4) (Nov. 2016) ("USSG").

As the instant offense involved the possession of firearms, a two-level enhancement is warranted per Guideline § 2D1.1(b)(1), as noted *supra*. *See* Plea Agreement ¶ 2.

7

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree Defendant should receive a three-point reduction for acceptance of responsibility. This would bring Defendant's total adjusted level to thirty-one.

In Defendant's plea agreement, the Government estimated that the Defendant would receive a two-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0 . . . only if the conditions set forth in Paragraph 15 [of the plea agreement] are satisfied." Plea Agreement ¶ 2. Paragraph fifteen, in turn, provided that the reduction would apply only if: 1) eighteen listed defendants entered guilty pleas on or before May 17, 2017; and 2) those pleas were accepted by a United States District Court Judge at the time of the plea allocution or, if the plea was taken by a Magistrate Judge, on or before May 31, 2017. *Id.* ¶ 15. Not all of the listed defendants pled guilty by May 31, 2017, but all defendants have now pled guilty. Paragraph 15 of the plea agreement further states:

> If fewer than all of the covered defendants satisfy conditions 15(a) and 15(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial. The Office may also elect not to recommend a two-level reduction under the Guidelines for a global disposition, as contemplated in Paragraph 2. However, if all of the following covered defendants satisfy conditions 15(a) and 15(b) and the Office does not elect to void the defendant's plea agreement, the Office agrees to recommend a one-level reduction under the Guidelines for a global disposition: Stanley Cherenfant, Steven Cherenfant, Aikiam Floyd, Brandon Greenidge, Jeffrey Joseph, Silbert Nicholson, Zadek Orgias and Stephon Rene. No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

In its Guidelines calculation, Probation does not account for any Global Resolution reduction, and arrives at a total adjusted offense level of thirty-one. PSR ¶ 53. Defendant's lack

8

of a criminal history results in a criminal history score of zero, establishing a criminal history category of I. USSG Ch. 5, Part A. With a criminal history category of I and a total offense level of 31, the Guidelines imprisonment range would be 108 to 135 months. PSR ¶ 91. The Probation Department reported in the PSR that the Government agreed to a one-level reduction per Policy Statement 5K2.0. *Id.* ¶ 107. A one level reduction would result in a total offense level of 30, and with a criminal history category of I, the advisory guideline imprisonment range would be 97 to 121 months. *Id.* In the PSR, Probation recommended 121 months custody and three years supervised release, with special conditions. Probation Sentence Recommendation at 1, ECF No. 544-1.

In its sentencing memorandum, the Government advises that it stands by a two-level reduction for a Global Resolution, which would bring Defendant's adjusted offense level to twenty-nine. Gov't Sentencing Mem. at 3, ECF No. 615. With a criminal history category of I, the Guidelines range would be 87 to 108 months. The Government requests a sentence within that range. *Id.* at 1. The defense does not advocate a specific sentencing range, but rather requests a below Guidelines sentence of time served. Def. Sentencing Mem. at 5.

Given a total offense level of 29 and a criminal history category of I, the Guidelines suggest a term of imprisonment of between 87 and 108 months. USSG Ch. 5, Part A. Per the Guidelines, Defendant may also be sentenced to a term of supervised release of three years, *id.* § 5D1.2(a)(2)[1]; a fine of between $15,000.00 and $1,000,000.00, *id.* §§ 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2.

---

[1] The Guidelines suggest a supervised release term of one to three years. *See* USSG § 5D1.2(a)(2). However, the statutory minimum is three years. 21 U.S.C. § 841(b)(1)(C).

9

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Under USSG § 5K2.21, the "court may upward depart to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." As Probation notes, "the defendant was involved in a robbery and attempted murder. This additional criminal conduct could not be factored into the defendant's guideline calculation." PSR ¶ 108.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, see 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 108 months of incarceration, to be followed by 3 years of supervised release, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum thereto and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

_s/WFK_
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 6, 2018
      Brooklyn, New York